T. W. SNOOK & SON *v*. MT. CLEMENS SUGAR CO.

1. SALES—ACCEPTANCE AND RECEIPT—DELIVERY—INSPECTION.
   Where plaintiff copartnership claimed that it offered to deliver a lot of barrels which had been ordered by defendant, and received instructions from defendant to store them, and that after having done so and some time later, defendant's general manager looked over the barrels and indicated his approval or acceptance, an inadvertence of the court in charging the jury and assuming that he accepted the barrels before they were stored was not so prejudicial and erroneous as to require plaintiff's judgment to be reversed.

2. SAME—WAIVER OF INSPECTION—CONTRACTS.
   Evidence that the general manager was able to select good barrels when he saw them, that he saw them at plaintiff's factory and made no objection, that they were sufficient to comply with the order and that a letter was sent to and received by plaintiffs advising them when defendant

would be ready to receive the merchandise ordered, raised an issue of fact as to defendant's waiver of the right to inspect, the testimony tending to show a long delay in completing the contract on defendant's part.

Error to Macomb; Tucker, J. Submitted October 10, 1913. (Docket No. 18.) Decided April 7, 1914. Rehearing denied December 19, 1914.

Assumpsit by Thomas W. Snook & Son, a copartnership consisting of John R. Snook, the estate of Thomas W. Snook and others, against the Mt. Clemens Sugar Company for breach of a contract of sale. Judgment for plaintiffs and defendant brings error. Affirmed.

*Thomas A. E. Weadock*, for appellant.

*Martin Crocker*, for appellees.

McAlvay, C. J. This is an action of assumpsit brought by plaintiffs against defendant for the price and value of certain sugar barrels manufactured by plaintiffs for defendant, wherein plaintiffs recovered judgment.

Plaintiffs were engaged in manufacturing barrels at Mt. Clemens, and in 1905 defendant company, of the same place, requiring a large number of sugar barrels for the campaign of 1905-1906, asked plaintiffs for quotations on barrels, and by letters which passed between the parties a contract was entered into, as follows:

"Office of T. W. Snook & Son. Manufacturers of
Staves and Heading.
"MT. CLEMENS, MICH., June 24, 1905.
"MT. CLEMENS· SUGAR CO.,
"Mt. Clemens, Mich.
"*Gentlemen:*
"Complying with your request for quotations on barrels, will say we will agree to furnish you during the coming campaign with 20,000 sugar barrels delivered at your factory at 44½c each. These barrels

shall be standard sugar barrels made from thoroughly dry No. 1 30″ elm staves, No. 1 19⅛″ basswood heading and hooped with four wooden and two steel hoops.
"Yours truly,
"T. W. Snook & Son."

"Agricultural Department Mt. Clemens Sugar Company.
"Mt. Clemens, Mich., July 17, 1905.
"Messrs. T. W. Snook & Son,
"Mt. Clemens, Mich.

*"Gentlemen:*
"Replying to your favor of June 24th quoting price of 44½c each on standard sugar barrels delivered at our factory during the coming campaign, barrels to be made from thoroughly kiln dried No. 1, thirty inch elm staves and No. 1, 19⅛ inch basswood heading, hooped with four wooden and two steel hoops, barrels to be first class and acceptable to us. We herewith accept price quoted by you for between 15,000 and 20,000 sugar barrels and should we require more than this number you agree to furnish same at the same price. Confirming talk with our Mr. Weise we will advise you October 1st how many barrels, if any, over 15,000 will be required. Please favor us with an early reply confirming same.
"Yours very truly,
"Mt. Clemens Sugar Company,
"Geo. Elsey, Jr., Treasurer."

"Mt. Clemens, Mich., July 18, 1905.
"Mt. Clemens Sugar Co.,
"Mt. Clemens, Mich.

*"Gentlemen:*
"Replying to yours of 17th. We will make and deliver to your factory 15,000 to 20,000 standard sugar barrels in accordance with our letter of June 24, at 44½c each or we will make the number more than 20,000 if you require them, providing you advise us by Oct. 1st, how many more than the 15,000 you will require.
"These barrels shall be made of first class thoroughly dry material and are to be inspected and accepted by you on delivery at your factory. The above price per barrel shall not cover any nails or staples for

fastening hoops in place nor shall it include head liners. Neither will we furnish hoops nor heads to take the place of those broken by your men, except we charge you the market price for same.

"Yours truly,
"T. W. SNOOK & SON."

Plaintiffs entered upon the manufacture and delivery of these barrels as they were requested or needed during the months of October, November, and December, 1905, having delivered during that time 13,087 standard sugar barrels, which were received, inspected, and accepted at defendant's factory. About January 1, 1906, the balance of the barrels plaintiffs had manufactured under this contract not having been called for, one of the plaintiffs went to defendant's factory and informed the superintendent, Mr. Weise, that the balance of the barrels were ready for delivery, and requested him to take them. The superintendent said that he had no room for them because the warehouse was full of sugar, but he would take them in as soon as he could get room, and requested plaintiffs to store them. Plaintiffs then stored the barrels in the upper part of their cooper shop, as requested.

There is no dispute in the facts in this case as far as stated. Defendant does challenge and dispute the authority of Superintendent Weise to give any instructions to plaintiffs relative to storing the barrels, and the parties do not agree as to what occurred between them when defendant's general manager, Elsey, went to plaintiffs' factory to examine the barrels in question.

The manufacture of beet sugar requires the operation of a factory less than one-third of the year, which season is called a campaign. It is begun in the autumn after the beet crop is harvested and freighted to the factory, and continues until December or January following.

On September 8th, before the campaign of 1906

began, plaintiffs wrote to defendant the following letter:

"Mt. Clemens, Mich., Sept. 8, 1906.
"Mt. Clemens Sugar Co.,
              "Mt. Clemens, Mich.
"*Gentlemen:*
"How soon will you receive the barrels made for you last season?
                    "Yours truly,
                          "T. W. Snook & Son."

Defendant answered as follows:

"Mt. Clemens, Mich., Sept. 10th, 1906.
"Messrs. T. W. Snook & Son,
              "Mt. Clemens, Mich.
"*Gentlemen:*
"Replying to your favor of the 8th instant, inquiring how soon we will be able to receive the barrels made last season. Captain Davidson is here today; we have had this matter up with the captain and he instructs us to write you that we will be ready to commence receiving the barrels October 1st, when you may deliver 1,000, and the balance, about 900 more, a little later. It is understood, of course, the price is to be the same as last year, 44½c delivered.
                    "Yours very truly,
                    "Mt. Clemens Sugar Company,
                    "Geo. Elsey, Jr., General Manager."

To which plaintiff replied:

"Mt. Clemens, Mich., Sept. 11, 1906.
"Mt. Clemens Sugar Co.,
              "Mt. Clemens, Mich.
"*Gentlemen:*
"Your favor of the 10th is at hand and contents noted. We stand ready at any time to deliver the barrels and have been anxious all along to do so, as you were notified.
"Will deliver them at the contract price, viz.: 44½c but shall, of course, expect you to pay interest, storage, and insurance, while we have been carrying them for you.
                    "Yours very truly,
                          "T. W. Snook & Son."

After the letter of September 8th was written by plaintiffs, and before the defendant answered it, defendant's general manager, Elsey, went to plaintiffs' factory where these barrels were stored, examined them, and was satisfied with such examination. Defendant never replied to the last letter from plaintiffs dated September 11, 1906. No portion of the barrels in suit was ever delivered. Some time before suit was commenced plaintiffs requested defendant to take the barrels. Plaintiffs claim they are entitled to the contract price of 1,900 barrels, with interest, and also for storage of the same after January, 1906.

At the close of plaintiffs' case, and at the close of all the testimony, counsel for defendant asked for an instructed verdict, which was denied and exceptions were taken. The case was submitted to the jury, and a verdict was rendered in favor of plaintiffs. Defendant thereupon made a motion for a new trial for the reasons that the court erred in not directing a verdict, in not giving defendant's requests, and because the verdict was contrary to the evidence. This motion was denied. Later a judgment was in due course entered upon the verdict. This court is asked to reverse the judgment upon errors assigned; upon exceptions taken during the course of the trial; upon the denial of the motions referred to; upon the refusal to grant a new trial; the refusal to give defendant's requests; and to certain portions of the charge as given.

Appellant's second and fourteenth assignments of error are combined and presented together, and with them is also considered assignment 13. These are the most important questions presented in the case.

Defendant's second assignment of error is based upon the admission by the court of testimony of one of the plaintiffs relative to statements made by defendant's general manager, Elsey, when, in September, 1906, he came to plaintiffs' barrel factory to examine these barrels, which had been made under the

contract with defendant and stored at that place since January, 1906, which was claimed by plaintiffs amounted to an acceptance of the barrels and waiver of inspection by defendant.

Appellant, in discussing these two assignments of error, combines with them the portion of the charge of the court which is covered by the thirteenth assignment of error as follows:

"Now, gentlemen of the jury, if you are satisfied by a fair preponderance of the evidence that these 1,913 barrels were ready for delivery by the plaintiffs in December, 1905, or January, 1906, that they were such barrels as plaintiffs were required by their contract to manufacture and furnish for the defendant, that they were looked over by a representative of the defendant authorized to represent the defendant, and that the defendant company then and there agreed to take the barrels and requested the plaintiffs to keep the barrels for the defendant until the following season opened up, then if, as I say, you find these things by a fair preponderance of the evidence, then the barrels on hand at that time (December, 1905) became the barrels of the defendant company, and should have been paid for by them; and, under these circumstances, if these barrels were kept by the plaintiffs in their storeroom at the request of defendant, then the defendant would be liable to the plaintiffs for a reasonable sum for the storage of the barrels from the time that request was made until such time as they desired their delivery, and unless you are satisfied by a fair preponderance of the evidence that the defendant company by its duly authorized agent looked over the barrels and agreed to take them, and requested the plaintiffs to keep the barrels for them, your verdict must be for the defendant."

The record shows that after the court had given this portion of the charge included in the thirteenth assignment of error, counsel for defendant, at the close of the charge, called attention to it, by saying:

"*Mr. Weadock:* I want to call your honor's attention to the fact that you spoke of a representative of

the company looking over the barrels, and it would seem that that would take the place of inspection. That was Mr. Elsey, and he looked at the barrels and made the remark that they seemed to have kept well, and that was in no sense an inspection, and could not be considered an inspection as a matter of law."

In reply the court gave the portion of the charge covered by the fourteenth assignment of error, as follows:

*"The Court:* It is my view of the law that while the contract gave the parties the right of inspection at the factory, as I understand it, and required delivery at the factory, these matters are matters that could be waived, and unless you find they were so waived in the manner I have suggested, the defendant [will] be entitled to your verdict."

Counsel for defendant at once, in the presence of the jury, excepted orally to certain portions of the charge, and, to the portion last above quoted, said:

"Defendant   *   *   *   excepts to the charge with reference to the barrels having been looked over or accepted by a representative of the company at the place where they were."

It is the contention of appellant that the court confused the testimony of witnesses Snook, Weise, and Elsey in his charge, thereby incorrectly presenting the evidence to the jury. In the first paragraph of that portion of the charge above quoted, under the thirteenth assignment of error, it will be noticed that the court said to the jury:

"If you are satisfied   *   *   *   that they were such barrels as plaintiffs were required by their contract to manufacture and furnish for the defendant, that they were looked over by a representative of the defendant authorized to represent the defendant, and that the defendant company then and there agreed to take the barrels, and requested the plaintiffs to keep the barrels for the defendant until the following season opened up, then if, as I say, you find these things

by a fair preponderance of the evidence, then the barrels on hand at that time [December, 1905] became the barrels of the defendant company.  *   *   * "

The testimony in the case upon which this portion of the charge is based was given by plaintiff Snook, who testified that Superintendent Weise, about January 1, 1906, when the barrels were ready for delivery and were offered to him at the sugar factory by witness, told him there was no room for them, and to store them, which plaintiffs did. The superintendent's testimony upon the matter, which was introduced, corroborated Snook. Eight months later, between September 8 and 10, 1906, it is undisputed that General Manager Elsey examined these barrels in plaintiffs' barrel factory, and at that time the statements were made by him which were urged by plaintiffs on the trial as an examination and acceptance of the barrels. It is evident that the court inadvertently confused the order of events, for there is no claim that the superintendent looked over, saw, or examined the barrels at the time he told plaintiffs to store them, nor is there any claim that the manager, Elsey, saw these barrels before September, 1906. There can be no question but that the record shows that the balance of the barrels were offered at the factory to the superintendent, who could not receive them for want of space, and they were stored by plaintiffs at his request, and that General Manager Elsey, from his testimony, had knowledge of that fact, or that the record also shows that the general manager knew that these barrels had been made under the contract, and in 1906, after receiving plaintiffs' letter of September 8th, *supra,* demanding to know when defendant would receive these barrels, went to plaintiffs' factory for the purpose of discovering whether these barrels were satisfactory.

Counsel for defendant now contends that this inadvertence on the part of the court in his charge was

misleading to the jury and prejudicial. From the statement of counsel to the court at the time relative to this portion of the charge, the court's attention was not called to this proposition, but directed only to the matter of the acceptance of the barrels without inspection. This was answered by the court in the words of the charge last above given, which was immediately followed by an exception taken by counsel "to the charge with reference to the barrels having been looked over or accepted by a representative of the company at the place where they were." All of the testimony relative to ordering the barrels stored by the superintendent, and the visit later in the year of the general manager to ascertain the condition of the barrels in storage, is so clear and brief that in our opinion the portion of the charge of the court in relation thereto which defendant criticises did not confuse the jury and was not prejudicial to the defendant.

It remains to be considered whether the record shows there was evidence in the case upon the question of the acceptance by defendant's general manager of the barrels at plaintiffs' factory, and a waiver of the inspection provided for in the contract. From what has already been said relative to this matter, from the fact that the general manager testified that he knew a good barrel when he saw it, from the testimony of Mr. Snook as to what occurred at that interview, and testimony of expert witnesses as to the condition of the barrels, and the fact that General Manager Elsey immediately answered plaintiffs' letter of September 8th by a letter of September 10th, saying defendant would be ready for the delivery of 1,000 barrels October 1st, and the balance later at the contract price, our conclusion is that the question was one of fact, and not of law, which was submitted by the court to the jury under proper instructions.

The remaining contentions of defendant relied upon do not require consideration. We find no prejudicial error in the case.

The judgment of the circuit court stands affirmed.

BROOKE, STONE, OSTRANDER, BIRD, MOORE, and STEERE, JJ., concurred. KUHN, J., did not sit.